IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**MICHAEL NADOLNY, # K-95062,** )
)
        **Plaintiff,** )
)
vs. ) Case No. 18-cv-1151-MJR
)
**DAVID STOCK,** )
)
        **Defendant.** )

# MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff, currently incarcerated at Centralia Correctional Center ("Centralia"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendant denied him the right to practice the religion of his choice. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell*

1

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that Plaintiff's claim survives threshold review under § 1915A.

## **The Complaint**

In January 2017, Plaintiff decided to inquire about Islam, and studied with Muslim prisoners in his housing unit for about a month. (Doc. 1, p. 4). He then decided to declare his Shahadah, which consists of proclaiming 2 testimonies in order to enter into the religion of Islam. *Id.*

Prison policy dictates that an inmate must submit a written request to the Chaplain in order to change his designated religion. Plaintiff sent a request slip to Stock (the Assistant Warden for Programs, including chaplain services) asking to change his religion from Baptist to Islam. (Doc. 1, pp. 1, 4).

2

Plaintiff met with Stock regarding his request. Stock proceeded to question Plaintiff about why he wanted to convert to Islam. Plaintiff responded that he "believed with conviction that God (Allah) is the Creator and Sustainer of the universe." (Doc. 1, pp. 4-5). Stock continued questioning Plaintiff about Islam, seeking information that "only a devout Muslim would know." (Doc. 1, p. 5). Plaintiff was unable to provide the information sought by Stock, as he had not yet attended any Jumah services. Stock expressed his doubt regarding why a Caucasian such as Plaintiff would want to convert to a predominantly African-American religion. Plaintiff told Stock that his mother had just died on October 31, 2017, and he was distressed and depressed because he had not been able to seek comfort through Jumah services. Plaintiff had sought support from mental health staff to help him deal with his inability to attend Jumah, as well as his mother's death. Even knowing this information, Stock would not permit Plaintiff to convert to Islam, telling Plaintiff that his mother's death might be clouding his judgment. (Doc. 1, p. 5). Stock told Plaintiff to "explore other religions," and took it upon himself to change Plaintiff's designated faith to Jewish. (Doc. 1, p. 6).

On November 21, 2017, Plaintiff sent an Offender Request Slip to Stock, asking him to change Plaintiff's religion to Islam, but Stock denied the request. (Doc. 1, pp. 6, 14). Another request sent by Plaintiff on December 7, 2017, was also denied by Stock. *Id*. Plaintiff filed a grievance to resolve the matter.[1] (Doc. 1, pp. 6, 10-11). The response to that grievance wrongfully stated that Plaintiff had withdrawn his request to change his religion during his conversation with Stock; Plaintiff says that he ended the conversation because of his frustration with Stock's attempt to pressure him into choosing a religion other than Islam. (Doc. 1, pp. 6, 10, 12).

---

[1] Plaintiff's attached grievance is dated December 12, 2017. (Doc. 1, p. 10). However, his statement of claim notes, apparently in error, that he filed the grievance on January 5, 2018. (Doc. 1, p. 6).

At some point thereafter, Plaintiff's request to change his designated faith to Islam was granted, and his grievance appeal was declared moot. (Doc. 1, pp. 6, 13). However, Plaintiff had been denied the ability to freely practice his chosen faith for several months. (Doc. 1, p. 7).

Plaintiff raises a First Amendment claim against Stock for interfering with his right to freely exercise his religious beliefs, by denying Plaintiff's request to change his designation to Islam. (Doc. 1, p. 7). Plaintiff seeks declaratory relief, and punitive and compensatory damages. (Doc. 1, p. 8).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to characterize the *pro se* action in a single count. The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of this count does not constitute an opinion as to its merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** First Amendment claim against Stock, for denying Plaintiff permission to practice his chosen faith of Islam.

This claim survives review under § 1915A.

## Count 1 – Free Exercise of Religion

It is well-established that "a prisoner is entitled to practice his religion insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990); *see Al-Alamin v. Gramley*, 926 F.2d 680, 686 and nn. 3-5 (7th Cir. 1991) (collecting cases). On the other hand, a prison regulation that impinges on an inmate's First Amendment rights is nevertheless valid "if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482

U.S. 78, 89 (1987)). Such interests include inmate security and the proper allocation of limited prison resources. *See id.* at 348, 352-53; *Turner*, 482 U.S. at 90; *Al-Alamin*, 926 F.2d at 686.

The Seventh Circuit recognized years ago that "while freedom to believe is absolute, the exercise of religion is not . . . ." *Childs v. Duckworth*, 705 F.2d 915, 920 (7th Cir. 1983), and "prison officials may legitimately impose certain restrictions on the practice of religion in prison . . ." where there is a compelling interest. *Id.* (citations omitted). Legitimate penological interests include the preservation of security in prison, as well as economic concerns. *See Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009). When these concerns are raised as justifications by prison officials for their actions that restrict the practice of religion, the Court looks at the four "*Turner*" factors to determine whether the restriction is constitutional:

> (1) whether the restriction "is rationally related to a legitimate and neutral governmental objective"; (2) "whether there are alternative means of exercising the right that remain open to the inmate"; (3) "what impact an accommodation of the asserted right will have on guards and other inmates"; and (4) "whether there are obvious alternatives to the [restriction] that show that it is an exaggerated response to [penological] concerns."

*Ortiz*, 561 F.3d at 669 (citing *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004)).

In his Complaint, Plaintiff does not challenge the prison regulations governing the procedure for an inmate to change his designated religion, nor does he complain that any particular regulation interfered with the free exercise of his beliefs. Therefore, whether the prison has valid penological reasons for their regulations is not at issue. Rather, Plaintiff complains that Stock personally infringed on his ability to practice his faith, by denying his request to convert from Baptist to Islam.

Prison officials may legitimately deny a request for a religious accommodation where they determine an inmate's professed religious beliefs are insincere. *See Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13 (2005) ("Prison officials may appropriately question whether a

5

prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic. Although RLUIPA [the Religious Land Use and Institutionalized Persons Act] bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion, see 42 U.S.C. § 2000cc-5(7)(A), the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity."). In Plaintiff's case, Stock questioned Plaintiff's sincerity, but the conversation as related by Plaintiff suggests that Stock's doubts stemmed more from his own personal biases than from any uncertainty on Plaintiff's part. Plaintiff was quite clear in making his chosen religious preference known to Stock. Based on the factual allegations in the Complaint, Plaintiff states a plausible claim against Stock for violating Plaintiff's First Amendment rights.

Plaintiff did not assert a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). If Plaintiff were seeking injunctive relief, he could raise a RLUIPA claim based on the events he described. *See Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) (advising courts to interpret First Amendment free exercise claims filed by *pro se* plaintiffs as including a RLUIPA claim). However, since Plaintiff is not seeking an injunction, and damages are not available under RLUIPA, the Court sees no need at this time to consider a RLUIPA claim in this action. *See Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) (money damages are not available in suits against a state under the RLUIPA; further, money damages cannot be awarded against public employees in their personal capacities (citing *Sossamon v. Texas*, 563 U.S. 277 (2011); *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989); *Nelson v. Miller*, 570 F.3d 868 (7th Cir. 2009)).

## **Pending Motion**

Plaintiff paid the $400.00 filing fee for this action in full on June 6, 2018. On June 12, 2018, he filed a motion for leave to proceed *in forma pauperis* ("IFP"). (Doc. 6). The motion

discloses that on May 16, 2018, Plaintiff had a balance in his inmate trust fund account of $5,586.30, immediately before he submitted the instant action on May 18, 2018. His average balance over the previous 6 months exceeded $2,000.00, and 20% of his average 6-month balance amounts to more than the $400.00 fee. *See* 28 U.S.C. § 1915(b). Based on this information, Plaintiff does not qualify to proceed IFP in this action. Therefore, the motion for leave to proceed IFP (Doc. 6) is **DENIED**.

## Disposition

**COUNT 1** survives review under § 1915A. However, because Plaintiff's application to proceed IFP has been denied, the Court will not automatically appoint the United States Marshal to effect service of process upon Defendant **STOCK** so that this action may proceed. Therefore, if Plaintiff desires to request the appointment of the United States Marshal to serve process on the Defendant, **IT IS ORDERED** that Plaintiff **SHALL FILE** a Motion for Service of Process at Government Expense, within 28 days of the date of entry of this order (on or before July 24, 2018). The Clerk of Court is **DIRECTED** to mail to Plaintiff the Court's Pro Se Litigant Guide, containing forms and instructions for filing said motion.

If Plaintiff does not timely file a motion for service of process at government expense, it shall be Plaintiff's responsibility to have Defendant **STOCK** served with a summons and copy of the Complaint pursuant to Federal Rule of Civil Procedure 4.[2] Plaintiff is advised that only a non-party may serve a summons. FED. R. CIV. P. 4(c)(2).

If Plaintiff requests the appointment of the United States Marshal, the Clerk of Court shall prepare a summons and copies of the Complaint and this Memorandum and Order for the Defendant, and shall forward the same to the United States Marshal for service. If Plaintiff does

---

[2] Federal Rule of Civil Procedure 4(m) provides that service on each defendant must be accomplished within 90 days.

not file a motion for service of process at government expense within 28 days as ordered, the Clerk shall then prepare a summons for the Defendant, and shall forward the summons and sufficient copies of the Complaint and this Memorandum and Order to Plaintiff so that he may have Defendant served.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, if the United States Marshal is appointed to serve process pursuant to a motion by Plaintiff, the employer shall furnish the United States Marshal with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for effecting service of process. Any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file or disclosed by the Marshal.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: June 26, 2018**

                                        s/ MICHAEL J. REAGAN
                                        Chief Judge
                                        United States District Court